No. 15-51017

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### Appeal from Case No. 1:15-cv-151

## ISMAEL ALVARADO,
*Plaintiff – Appellant,*

v.

## U.S. BANK NATIONAL ASSOCIATION, as trustee for structured asset securities corporation mortgage pass-through certificates, series 2006-BCI,
*Defendant – Appellee.*

## BRIEF OF APPELLANT

William B. Gammon
Texas Bar No.: 07611280
GAMMON LAW OFFICE PLLC
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Telephone: 512-472-8909
Fax: 888-545-4279
Email: firm@gammonlawoffice.com

ATTORNEY FOR PLAINTIFF-APPELLANT

## ORAL ARGUMENT IS REQUESTED

No. 15-51017

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
Appeal from Case No. 1:15-cv-151

**ISMAEL ALVARADO,**
*Plaintiff – Appellant,*

v.

**U.S. BANK NATIONAL ASSOCIATION, as trustee for structured asset
securities corporation mortgage pass-through certificates, series 2006-BCI,**
*Defendant – Appellee.*

## BRIEF OF APPELLANT

William B. Gammon
Texas Bar No.: 07611280
GAMMON LAW OFFICE PLLC
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Telephone: 512-472-8909
Fax: 888-545-4279
Email: firm@gammonlawoffice.com

ATTORNEY FOR PLAINTIFF-APPELLANT

**ORAL ARGUMENT IS REQUESTED**

No. 15-51017

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
Appeal from Case No. 1:15-cv-151

## ISMAEL ALVARADO,
*Plaintiff – Appellant,*

v.

## U.S. BANK NATIONAL ASSOCIATION, as trustee for structured asset securities corporation mortgage pass-through certificates, series 2006-BCI,
*Defendant – Appellee.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Appellant:**

Ismael Alvarado

**Attorneys of record for Appellant**:

William B. Gammon, SBN 07611280
E. Jason Billick, SBN 24078230
GAMMON LAW OFFICE, PLLC
1201 Spyglass Drive, Suite 100
Austin, TX 78746
Phone: (512) 444-4529
Facsimile: (888) 545-4279
Firm@gammonlawoffice.com

| **Appellee:** | **Attorneys of record for Appellee:** |
|---|---|
| U.S. Bank National Association | B. David L. Foster, SBN 24031555 <br> LOCKE LORD LLP <br> 600 Congress Ave., Suite 2200 <br> Austin, TX 78701 <br> Phone: (512) 305-4700 <br> Facsimile: (512) 305-4800 <br> dfoster@lockelord.com <br> Robert T. Mowrey, SBN 14607500 <br> Matthew Davis, SBN 24069580 <br> LOCKE LORD LLP <br> 2200 Ross Avenue, Suite 2200 <br> Dallas, TX 75201 <br> Phone: (214) 740-8000 <br> Facsimile: (214) 740-8800 <br> rmowrey@lockelord.com <br> mdavis@lockelord.com |

*/s/ William B. Gammon*
William B. Gammon

## <u>WAIVER OF ORAL ARGUMENT</u>

The Plaintiff/Appellant suggests that the issues presented should not be determined solely upon the record and that oral argument would benefit the panel. The facts of the case are complex and the issues presented have become sufficiently muddled by misinterpretation and the law sufficiently misapplied that oral argument would benefit the panel. The appropriate legal standards are hotly disputed in this evolving area of the law, and the District Court has taken it upon itself to infer facts not in the record in determination of Appellee's motions for summary judgment. *See* Fed. R. App. P. 34(2)(C).

*/s/ William B. Gammon*
William B. Gammon

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................3

WAIVER OF ORAL ARGUMENT .........................................................................5

TABLE OF CONTENTS..........................................................................................6

TABLE OF AUTHORITIES ....................................................................................7

JURISDICTION........................................................................................................9

STATEMENT OF THE ISSUE...............................................................................10

STATEMENT OF THE CASE................................................................................11

SUMMARY OF THE ARGUMENT ......................................................................13

ARGUMENT AND AUTHORITIES......................................................................14

    **A. Standard of Review** ................................................................................**14**

    **B. There exists a genuine issue of material fact..........................................15**

        **1. There exists genuine issues of material fact as to whether the payments made during Appellant's Trial Payment Plan deem the acceleration as abandoned ....................................................17**

        **2. Equitable estoppel prevents Appellee from relying upon the loan modfication executed in 2010..............................................20**

        **3. Appellee did not unilaterally abandon the original acceleration by sending subsequent notices of default and notices of acceleration ....................................................................................22**

        **4. Appellee is estopped from relying upon the 2010 account statement because the statement was inaccurate and constitutes as unlawful dual tracking........................................23**

    **C. Appellant's remaining causes of action are supported by his claim that the underlying security instrument is void by virtue of statute of limitations................................................................................................23**

CONCLUSION........................................................................................................24

CERTIFICATE OF SERVICE ...............................................................................25

CERTIFICATE OF COMPLIANCE.......................................................................26

# TABLE OF AUTHORITIES

## CASES

*APS Capital Corp. v. Mesa Air Group Inc.*, 580 F.3d 265
(5th Cir. Tex. 2009)……………………………………...……………19

*Burns v. Thomas,* 786 S.W.2d 266 (Tex.1990) ……………………………...14

*Callan v. Deutsche Bank Trust Co. Ams.*, 11 F. Supp. 3d 761
(S.D. Tex. 2014)……………..…………………………………………..22

*Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115
(5th Cir. 1992)……………..…………………………………………14

*Celetox Corp. v. Catrett*, 477 U.S. 317 (1986)……………………………14

*Duckett v. City of Cedar Park*, 950 F.2d 27 (5th Cir. 1992)………………………14

*Gordon Swobodo v. Ocwen Loan Servicing, LLC, et al*, 2015
U.S. Dist. LEXIS 104852 (S.D. Tex. Aug. 10, 2015) ……………………..14

*Guajardo v. J.P. Morgan Chase Bank, N.A.*, 2015 U.S. App.
LEXIS 3731 (5th Cir. March 10, 2015)……………………………………20

*Holy Cross Church of God in Christ v. Wolf*,
44 S.W.3d 562 (Tex. 2001)………………...…..............…………………15,16

*Lagou v. U.S. Bank Nat'l Ass'n*, 2013 Tex. App. LEXIS 14739
(Tex. App.—Houston [1st Dist.] Dec. 5, 2013, no pet.)…………………...…14

*Lawrence v. Fed. Home Loan Mortg. Corp.*, 2015 U.S. Dist.
LEXIS 40012 (W.D. Tex. Mar. 30, 2015) …………………………………20

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)…………………..……..14

*McLemore v. Pacific Southwest Bank*, 872 S.W.2d 286
(Tex. App. – Texarkana 1994, writ dism'd by agr.)………………………..15

*Merritt-Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957
(5th Cir. Tex. 1999) ……………..………………………………………19

*Stewart v. U.S. Bank Nat'l Add'n*, No. H-13-3197, slip op. at 9
  (S.D. Tex. Jan 23, 2015) (Hittner, J.) …………………………………..20

## OTHER AUTHORITIES

Code of Federal Regulations, Title 12, Chapter X §1024.41…..……..……………23

## RULES

Federal Rule of Civil Procedure 56……………………..…..…………..…………......14

## CODES

Texas Civil Practices & Remedies Code 16.035 …………………………………15

## **JURISDICTION**

1.01   This is an appeal from a Final Judgment[1] entered on September 23, 2015

granting Appellee U.S. Bank National Association's motion for summary judgment,

in which the U.S. District Court, Honorable Robert Pitman presiding, dismissed with

prejudice all claims brought by Plaintiff Ismael Alvarado, including a suit to quiet

title and trespass to try title. The jurisdiction of this Court is invoked pursuant to 28

U.S.C. §1291.

---

[1] ROA.15-51017.531

## **STATEMENT OF THE ISSUE**

2.01    Did the district court err in determining that Appellee's actions amount to the abandonment of the October 2008 acceleration where 1) none of its actions changed the loan status, 2) Appellee waived its right to abandon the acceleration in the Trial Payment Period Agreement, and 3) Appellee is barred from intentionally abandoning the original acceleration in order to extend the statute of limitations?

## STATEMENT OF THE CASE

3.01 On December 5, 2005, Ismael Alvarado ("Appellant") took out a home equity loan on his property located at 315 Mesa Drive Del Valle, Texas 78617. As security for the loan, Appellant executed a Texas Home Equity Security Instrument in favor of Aegis Funding Corporation[2].

3.02   In 2006, Appellant experienced economic hardship and began falling behind on his loan payments. On October 6, 2008, BRICE, VANDER LINDEN & WERNICK, P.C., hereinafter ("BVLW"), debt collector for Appellee, accelerated Appellant's loan.

3.03   On November 7, 2008, Wells Fargo Bank, N.A., purportedly acting as attorney-in-fact for U.S. Bank National Association ("Appellee"), recorded an Appointment of Substitute Trustee in the real property records of Bastrop County, Texas.[3]

3.04   On March 18, 2009, Appellee obtained an Order Allowing Foreclosure from the 21st District Court of Bastrop County, Texas.[4]

3.05   On April 13, 2009, debt collectors acting on behalf of Appellee served Appellant with another Notice of Acceleration and Notice of Trustee's Sale stating

---

[2] ROA.15-51017.26 to 15-51017.40
[3] ROA.15-51017.41
[4] ROA.15-51017.42 to 15-51017.43

that the sale would take place May 5, 2009.[5] However, the foreclosure sale did not take place until July 1, 2014 when the property was purportedly sold to Appellee and a Substitute Trustee's Deed was recorded.[6]

3.05   On January 2, 2015, Appellant filed suit against Appellee in the 335th District Court of Bastrop County, Texas.

3.06   Appellee removed the action to federal court on February 23, 2015.[7]

3.07   On July 27, 2015, Appellant filed his Motion for Summary Judgment.[8]

3.08   On August 14, 2015, Appellee filed its Motion for Summary Judgment.[9]

3.09   After reviewing the motions from both parties and all responses thereto, the trial court issued its Order[10] denying Appellant's Motion and granting Appellee's Motion and its Final Judgment[11].

3.10   On October 23, 2015, Appellant filed his Notice of Appeal with the trial court.[12]

---

[5] ROA.15-51017.44 to 15-51017.46
[6] ROA.15-51017.47 to 15-51017.48
[7] ROA.15-51017.5 to 15-51017.54
[8] ROA.15-51017.69 to 15.51017.237
[9] ROA.15-51017.242 to 15.51017.351
[10] ROA.15-51017.519 to 15-51017.29
[11] ROA.15-51017.30
[12] ROA.15-51017.531

# **SUMMARY OF THE ARGUMENT**

4.01   The district court erred in determining that Appellee abandoned its 2008 acceleration and therefore was not barred by the statute of limitations from foreclosing on Appellant because their exists genuine issues of material fact as to whether any of Appellee's actions amount to an abandonment of the acceleration.

# ARGUMENT AND AUTHORITIES

## A. Standard of Review

5.01   The appellate court reviews a grant of summary judgment *de novo. Lagou v. U.S. Bank Nat'l Ass'n*, 2013 Tex. App. LEXIS 14739, *5 (Tex. App.—Houston [1st Dist.] Dec. 5, 2013, no pet.). Summary judgment is appropriate when the pleadings and evidence show that no genuine issue exists as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In a summary judgment proceeding, the movant must make a prima facie showing that he is entitled to the relief sought. *Celetox Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the movant satisfies his burden, the burden shifts to the non-movant to show that there is a genuine factual dispute requiring a trial. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). "This burden is not satisfied with some metaphysical doubt as to material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotations and citations omitted). The movant's motion must be granted if he satisfies his burden and the non-movant fails to show that a genuine issue exists as to a material fact. *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1119 (5th Cir. 1992). A party moving for summary judgment on limitations grounds must prove when the cause of action accrued. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990).

**B.      There exists a genuine issue of material fact as to whether Appellee ever abandonment its 2008 acceleration.**

5.02    Suits to enforce a lien are governed by a four-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.035. For notes secured by a real property lien that are payable in installments, the four-year limitations period does not begin until the maturity date of the last payment or obligation. *Id.* § 16.035(e). When the maturity date of a note secured by a real property lien is accelerated pursuant to the terms of the note, then the cause of action accrues and limitations begins to run on the date of such acceleration. *Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.). If under the terms of the note, the acceleration is optional at the election of the note holder, the action accrues only when the note holder actually exercises its option to accelerate. *Id.* (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)).

5.03    Acceleration of a note occurs when the mortgagee provides a notice of intent to accelerate and notice of acceleration. *Burney v. Citigroup Global Mkts. Realty Corp.,* 244 S.W.3d 900, 903 (Tex. App.--Dallas 2008). Alternatively, a trustee's sale is sufficient to constitute notice of acceleration if preceded by the required notice of intent to accelerate. *Id.* at 905 (citing *McLemore v. Pacific Southwest Bank*, 872 S.W.2d 286, 292 (Tex. App. – Texarkana 1994, writ dism'd by agr.). When a cause of action accrues is a question of law for the court, while whether a holder has

accelerated a note is generally a question of fact if it is not clear on its face. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567-68 (Tex. 2001).

5.04   The Texas courts have held that "parties can abandon acceleration and restore the contract to its original terms by the parties' *agreement* or *actions*." *Khan*, 371 S.W. at 353, citing *Holy Cross*, 44 S.W. 3d at 567 (emphasis added). Here, there is no written agreement between the parties indicating that the acceleration has either been waived or abandoned. If there is not an agreement in place, then the Court must examine the actions of the parties.

5.05   On September 2, 2008, BVLW, on behalf of Appellee, sent Appellant a Notice of Default and Intent to Accelerate. On October 6, 2008, BVLW sent Appellant a Notice of Acceleration. Therefore, Appellee's statute of limitations to enforce the Security Instrument and foreclose on the subject property began to run on October 6, 2008 (ending on October 6, 2012). Appellee did not foreclose on the Property until July 1, 2014, approximately five years, eight months, and twenty-five days after Appellee accelerated the loan.

5.06   Appellee argues that the October 6, 2008 acceleration was abandoned in the following ways: (1) Appellant made, and Appellee accepted, payments less than the full amount of the accelerated loan; (2) the parties executed a loan modification agreement calling for payments less than the full amount of the loan; (3) Appellee sent, and Appellant received, subsequent notices of default and notices of

acceleration; and (4) Appellee sent, and Appellant received, an account statement and notice of default for less than the full amount due on the loan. There exists a genuine issue of material fact regarding whether any of the events relied on by Appellee actually constitute the abandonment of the 2008 acceleration.

**(1)**    **There exists a genuine issue of material fact as to whether the payments made during Appellant's Trial Payment Plan deem the acceleration as abandoned.**

5.07   On September 8, 2009, Appellee's mortgage servicer, America's Servicing Company ("ASC"), notified Appellant that he was eligible for a loan modification under the federal government's Home Affordable Modification Program ("HAMP"). In order to qualify for HAMP, Appellant was first required to complete the HAMP Trial Period Plan ("TPP"). Appellant received a HAMP Loan Trial contract ("TPP Agreement") that he signed and returned to ASC.[13] The TPP was implemented in an effort to determine the feasibility of a permanent modification for Appellant. Immediately thereafter Appellant began making his monthly trial payments in accordance with the terms of the TPP Agreement. Appellant tendered payment on September 2009, November 2009, and December 2009.

5.08   Appellee argues that these three payments tendered by Appellant constitute an abandonment of the acceleration. However, evidence shows that all three

---

[13] ROA.15-51017.480 to 15-51017.485.

payments were submitted in compliance with the TPP Agreement as a prerequisite for a final modification. The TPP Agreement, a contract drafted by the Appellee and/or through its agents, explicitly states:

> When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, ***and will not be deemed a waiver of, the acceleration of the loan*** or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

> TPP Agreement, ¶ 2(E) (emphasis added).

5.09   Therefore, pursuant to the terms of the TPP Agreement, both parties were in agreement that Appellant's payments during the trial period did not constitute an abandonment of the acceleration.

5.10   The lower court erroneously determined that the terms of the TPP Agreement were unenforceable because the TPP Agreement provided by the Appellant in his Response to Defendant's Motion for Summary Judgment was not signed by either party. However, Appellant contends that the original TPP Agreement signed by Appellant is in the possession of the Appellee as it was mailed to Appellee in September 2009. Appellant further asserts that sufficient evidence exists to support his claim that both Appellant and Appellee intended to enter a valid, enforceable TPP Agreement.

5.11   On September 14, 2009, ASC confirmed it received the first TPP payment in the amount and on the date as that required in the TPP Agreement. The ASC's Loan

Activity Archive entry for September 14, 2009 states that borrower, i.e. Appellant, called to confirm status of his payment and was told by an ASC agent that the first payment was applied to the TPP.[14] Additionally, the Loan Activity Archive entry for December 15, 2009 confirmed Appellant's third and final TPP payment was received and applied to loss mitigation.[15]

5.12    "Whether a contract exists involves both questions of fact--such as the intent of the parties--and questions of law--such as whether, the facts as found constitute a contract." *Merritt-Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir. Tex. 1999). "On *de novo* review of summary judgment in a contract matter, an appellate court may only decide the dispute if there is no genuine issue of fact material to the issues posed. If the matter cannot be decided as a matter of law, the court must remand for fact-finding." *APS Capital Corp. v. Mesa Air Group Inc*., 580 F.3d 265, 267 (5th Cir. Tex. 2009).

5.13    Therefore, since there exists a genuine issue of material fact as to whether Appellee intended to be bound by the terms of the TPP Agreement, including the provision waiving the right to abandon the acceleration, the Court must remand the case.

5.14    Alternatively, the Appellee is barred by promissory estoppel from claiming

---

[14] *See* ROA.15-51017.497.
[15] *See* ROA.15-51017.495.

that the waiver provision does not apply to it because (1) ASC as an agent of Appellee made a promise to Appellant to accept his payments and oblige to the agreed upon terms as reflected in the TPP Agreement; (2) Appellant's reliance on this promise is evident by his TPP payments; and (3) injustice can be avoided only by enforcing Appellee's promise. *Lawrence v. Fed. Home Loan Mortg. Corp*., 2015 U.S. Dist. LEXIS 40012, *61 (W.D. Tex. Mar. 30, 2015) citing *Guajardo v. J.P. Morgan Chase Bank, N.A*., 2015 U.S. App. LEXIS 3731, *17-18 (5th Cir. March 10, 2015).

5.15    Conclusively, there exists a question as to whether Appellee is bound by the abandonment waiver provision in the TPP Agreement which will determine whether the payments made during Appellant's Trial Payment Plan deem the acceleration as abandoned.

### (2)    Equitable estoppel prevents Appellee from relying upon the loan modification executed in 2010.

5.17    In most cases, a traditional loan modification and/or forbearance agreement would effectively abandon acceleration. *Stewart v. U.S. Bank Nat'l Add'n*, No. H-13-3197, slip op. at 9 (S.D. Tex. Jan 23, 2015) (Hittner, J.). A modification usually alters the terms of the original loan such as reducing the principal, changing the interest rate, etc. Fundamentally, the rule is that a modification abandons acceleration because *the status of the loan changes*. In the present case, the status of the loan never changed. The lower court erroneously approaches the rule in a

vacuum which undermines the underlying intent of the rule. The rule is not triggered because the borrower signed the loan modification, the rule is triggered because the status of the loan has changed which effectively deems the acceleration as no longer applicable. The trial court's misapplication of the rule is reversible error.

5.18    In *Swobodo*, a Houston Court was faced with an issue of whether merely sending a loan modification package to the borrower without the borrower signing off on it constitutes abandonment. *Gordon Swobodo v. Ocwen Loan Servicing, LLC, et al*, 2015 U.S. Dist. LEXIS 104852, *5 (S.D. Tex. Aug. 10, 2015) ("….absent more, an offer of a loan modification agreement is at most a conditional abandonment: if the borrower does not accept the loan modification, *then the status of the loan does not change and the prior acceleration remains intact*") (emphasis added).

5.19    Here, Appellant does not deny that he signed a loan modification. However, when the loan modification was received by ASC with Appellant's signature, the loss mitigation process on Appellant's loan was erroneously terminated. The loan modification was never applied to the loan, and the mortgage servicer communicated to Appellant that the modification was denied. *Id*. Thus, the Lender, despite signing the agreement, never truly accepted it. The status of the loan was never changed.

5.20    Therefore, not only does the rule not apply to the facts of this particular case but the Appellee is also estopped from relying upon an agreement in which it had no

intentions of complying with.

### (3) Appellee did not unilaterally abandon the original acceleration by sending subsequent notices of default and notices of acceleration.

5.21   A federal court recently held that a lender was estopped under Texas law from asserting its right of acceleration to the end of the limitations period, only to abandon that right in order to extend the statute of limitations by another four years. *Callan v. Deutsche Bank Trust Co. Ams*., 11 F. Supp. 3d 761, 770 (S.D. Tex. 2014). Incredibly, this is precisely what Appellee is attempting to do in the present case.

5.22   As previously stated, BVLW sent the Appellant a Notice of Acceleration on October 6, 2008. Therefore, Appellee's statute of limitations to enforce the Security Instrument and foreclose ended on October 6, 2012. Realizing that the statute of limitations was on the verge of expiration, Appellee sent Appellant a subsequent Notice of Default **six** weeks before the expiration date.

5.23   In *Swoboda* the Defendants argued that the lender sent an additional Notice of Acceleration to the borrower, and that the new notice of acceleration proves that the prior acceleration must have been abandoned at some previous time…The court unequivocally found that *such a rule would make a mockery of the statute of limitations*. *Swoboda,* 2015 U.S. Dist. LEXIS 104852 at *5.

5.24   Appellee's argument would require the Court create an exception that swallows the rule. The 2012 Notice of Default, July 2013 notice of acceleration, and December 2013 notice of acceleration do not abandon the original 2008 acceleration.

**(4)     Appellee is estopped from relying upon the 2010 account statement, because the statement was inaccurate and constitutes as unlawful dual tracking.**

5.25   Finally, Appellee again attempts to rely on its improper behavior during Appellant's Trial Payment Plan. As stated above, Appellant was complying with the TPP Agreement in an effort to determine the feasibility of a permanent modification. Appellant made the TPP payments from September 2009 until June 16, 2010 when Appellant's loan modification was finally approved albeit never implemented.

5.26   The TPP Agreement is clear that the loan status or payment amount would not change during this process. Therefore, the May 2010 statement on which Appellee relies was improperly sent to the Appellant and had no effect on the loan. It was clear from the language in the TPP Agreement that the loan status would only change if Appellant successfully completed the TPP. The payment amount stated in the May 2010 statement was inaccurate, so it was unreasonable for Appellant to rely on these account statements when he was under contract to pay something entirely different. These statements only prove that ASC was engaging in "dual tracking".[16]

**C.     Appellant's remaining causes of action are supported by his claim that the underlying security instrument is void by virtue of statute of limitations.**

Appellant's claim for quiet title and trespass to try title claim are both

---

[16] The Consumer Financial Protection Bureau now considers dual tracking improper under its recently promulgated rules. *See* 12 C.F.R. § 1024.41.

dependent on the Court's determination that the underlying security instrument is void for reasons stated above. Once that determination has been made, Appellee's argument that Appellant cannot show superior title fails. The evidence is clear. On October 6, 2012, the Security Instrument, made the basis of this lawsuit became void. Thus, the Trustee's Deed is invalid. Appellant is the owner of the Property, as more particularly described in the General Warranty Deed filed in 2000.

## **CONCLUSION**

For the foregoing reasons, Appellant Ismael Alvarado respectfully requests that the Court reverse the judgment of the District Court for the Western District of Texas and remand the matter for further action consistent with its opinion.

Respectfully submitted,

/s/ *William B. Gammon*
William B. Gammon, SBN: 07611280
GAMMON LAW OFFICE PLLC
1201 Spyglass Drive, Suite 100
Austin, Texas  78746
Telephone:  512-472-8909
Facsimile:  888-545-4279
Firm@gammonlawoffice.com
Attorney for Appellant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument has been served on this 27th day of January 2016.


B. David L. Foster, SBN 24031555
Locke Lord LLP
600 Congress Ave., Suite 2200
Austin, TX 78701
Phone: (512) 305-4700
Facsimile: (512) 305-4800
dfoster@lockelord.com

Robert T. Mowrey, SBN 14607500
Matthew Davis, SBN 24069580
Locke Lord LLP
2200 Ross Avenue, Suite 2200
Dallas, TX 75201
Phone: (214) 740-8000
Facsimile: (214) 740-8800
rmowrey@lockelord.com
mdavis@lockelord.com

*/s/ William B. Gammon*
William B. Gammon

## CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.2.7(c), the undersigned certifies this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).

1. Exclusive of the exempted portions in 5th Cir. R. 32.2.7(b)(3), appellant's brief contains 3,099 words

2. The brief has been prepared in proportionally spaced typeface using: Microsoft word 2011 for windows in times new roman 14 point.

3. If the court so requests, the undersigned will provide an electronic version of the brief and/or a copy of the word or line printout.

4. The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type volume limits in 5th Cir. R. 32.2.7, may result in the court's striking the brief and imposing sanctions against the person signing the brief.


*/s/ William B. Gammon*
William B. Gammon